J-S01028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                    :           PENNSYLVANIA
                    :

              v.               :

NICOLI ANTONIO SANTANA          :

            Appellant      :   No. 556 MDA 2023

Appeal from the PCRA Order Entered March 14, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004819-2017

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:      **FILED: MARCH 25, 2024**

Nicoli Antonio Santana appeals from the order denying without a hearing his first timely petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546.  We affirm.

This Court previously summarized the pertinent facts as follows:

> On February 28, 2017, [Santana] entered DeCarlo's Bar and Grill ("DeCarlo's") at around 8:50 p.m. [A few] hours later, on March 1, 2017 at around 1:00 a.m., Ian Moore ("Moore"), Miguel Colon ("Colon"), and Johnny Corchado ("Corchado") met up at DeCarlo's.  As soon as Moore, Colon, and Corchado entered DeCarlo's, [Santana] immediately stood up and walked to the back corner portion of DeCarlo's.  At approximately 1:10 a.m. when Moore went to the bathroom and came back to order a drink at the front of the bar, [Santana] moved to the other side of the bar close to the front door and waited leaning against the wall.  In the almost five-hour term that [Santana] was at DeCarlo's, [he] consumed three drinks total[.]  Moore, Colon, and Corchado had

---

[*] Retired Senior Judge assigned to the Superior Court.

drinks and talked briefly at the bar and left DeCarlo's through the front door at around 1:30 a.m.

A few seconds after Moore, Colon, and Corchado left the bar, [Santana] followed them and lingered in the vestibule of the bar, leaning in and out of the doorway observing [the three men] walking through the parking lot. [Santana] then went down the steps and walked through the stone lot and approached Moore, Colon, and Corchado stalking the trio while hugging the side of the building. When [Santana] was about 15 feet from Moore, Colon, and Corchado, [Santana] pulled a handgun out and fired multiple shots at Moore.

Corchado fled in the direction of DeCarlo's while Moore and Colon fled in the direction of Cherry Street. One of the shots hit Colon on his left thigh and one of the shots hit Moore on his arm. Colon at that point fled toward his car while Moore fled toward S. 3rd Street. [Santana] did not chase Colon but chased Moore onto zero hundred block of S. 3rd Street.

[Santana] eventually caught up with Moore. At close range, [Santana] fired multiple shots at Moore[, who] tumbled down to the ground. [Santana] shot a total of ten rounds at Moore in the parking lot and in the vicinity of zero hundred block of S. 3rd Street, and as a result, Moore suffered three gunshot wounds. Two of them were in the chest and abdomen area.

[Santana] started walking away from Moore, but then went back and pistol-whipped Moore, who was already on the ground. [Santana] left the scene, went back to his parked [car] on the 200 block of Cherry Street and drove off. Officers responded to radio dispatch of shots fired and arrived at the zero hundred block of S. 3rd Street. Officer Babbit and Officer White arrived at the scene and found Moore lying on the ground. Officers asked Moore some questions, but Moore was not able to give any answer as he was having a hard time breathing. Moore died as a result of the gunshot wounds to his chest and abdomen area.

*Commonwealth v. Santana*, 226 A.3d 645 (Pa. Super. 2020)(citations omitted) (non-precedential decision at 1-2).

Following his arrest, Santana was charged with multiple crimes, including the first-degree murder of Moore. Santana's trial began on January

28, 2019. As part of his defense, Santana testified on his own behalf. He informed the jury that, in 2003, Moore had shot him eight times and left him "scarred and with a permanent limp." Santana's Brief at 9 (unnumbered). Santana further testified that he had not seen Moore since that time. When he approached Moore and tried to talk to him, Moore's response caused him to "snap," and he just started shooting. Based on this testimony, Santana's trial counsel unsuccessfully sought a voluntary manslaughter instruction.

The jury convicted Santana of first-degree murder and related charges. On January 30, 2019, the trial court sentenced Santana to life imprisonment and a consecutive term of three to twelve years of imprisonment. Santana appealed. On January 21, 2020, this Court affirmed his judgment of sentence, *Santana*, *supra*, and, on August 12, 2020, our Supreme Court denied his petition for allowance of appeal. *Commonwealth v. Santana*, 237 A.3d 968 (Pa. 2020).

On January 4, 2021, Santana filed a *pro se* PCRA petition, and the PCRA court appointed counsel ("first PCRA counsel"). After that attorney was permitted to withdraw, the court appointed new counsel and granted him an extension of time to file either amended petition or a "no-merit letter" pursuant *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

On January 25, 2022, second PCRA counsel filed a *Turner*/*Finley* letter and motion to withdraw. Meanwhile, on August 22, 2022, privately-retained, third PCRA counsel entered his appearance. On September 22, 2022, the

PCRA court granted second PCRA counsel's request to withdraw. On September 27, 2022, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Santana's petition without a hearing. On November 7, 2022, third PCRA counsel filed a response to the court's Rule 907 notice. By order entered March 14, 2023, the PCRA court denied Santana's petition. This *pro se* appeal followed.[1] Both Santana and the PCRA court have complied with Pa.R.A.P. 1925.

Santana raises one issue on appeal, which we reproduce verbatim:

1. Was trial counsel, direct appeal counsel, and P.C.R.A. counsel all ineffective assistance of counsel's?

Santana's Brief at 2 (unnumbered).

This Court's standard of review for an order dismissing a PCRA petition calls for us to "determine whether the ruling of the PCRA court is supported by the evidence and free of legal error. The PCRA court's factual findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Webb**, 236 A.3d 1170, 1176 (Pa. Super. 2020) (citing **Commonwealth v. Barndt**, 74 A.3d 185, 191–92 (Pa. Super. 2013)).

---

[1] The PCRA court denied Santana's PCRA petition on March 14, 2023, after permitting second PCRA counsel to withdraw pursuant to **Turner**/**Finley**, **supra**. Santana filed his *pro se* notice of appeal on April 14, 2023, one day late. Nonetheless, our review of the lower court docket does not contain any indication that the order was served upon Santana. In this circumstance, we will consider the appeal timely. **See generally**, **Commonwealth v. Midgley**, 289 A.3d 1111 (Pa. 2023).

The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. [*See* Pa.R.Crim.P. 909(B)(2).] To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

Santana raises a layered claim of ineffectiveness of counsel. *See Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2022) (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").[2] To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to

---

[2] In his brief, Santana alleges "newly claimed evidence" of third PCRA counsel's alleged ineffectiveness. Although we conclude that Santana has preserved this claim, *Bradley*, *supra*, it fails given our determination that all of his claims of trial counsel's ineffectiveness do not entitle him to post-conviction relief. *See infra*.

- 5 -

be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.*

In making a layered claim of ineffectiveness, a PCRA petitioner "must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). "If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Id.*

We first address Santana's claims of trial counsel's ineffectiveness. The tripartite test we apply is well-settled, and each prong of the test has been explained as follows:

> The burden is on the [petitioner] to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel has no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they

- 6 -

effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted; formatting altered).

Although Santana phrases his ineffectiveness claims on appeal in general terms, he raised specific claims of ineffectiveness in his *pro se* PCRA petition, and, while we could not locate Santana's Rule 1925(b) statement in the certified record, the PCRA court, in lieu of a Rule 1925(a) opinion, states that the issues raised by Santana in his statement were adequately addressed by the PCRA court in its Rule 907 notice. As the three issues Santana argues in his brief are discussed in the Rule 907 notice, we will address them accordingly.

In his first claim, Santana asserts that trial counsel was ineffective for failing to "present an expert witness to support his two alternative defenses at trial, specifically the defense of diminished capacity due to his mental defect, of pas[t] traumas, and the defense of heat of passion." Santana's Brief at 8 (unnumbered). According to Santana, although trial counsel "appropriately counseled" him that he would need to testify in order to pursue a diminished capacity defense, "trial counsel should have investigated and presented expert testimony to support his diminished capacity defense by

having an expert witness assist the jury in understanding [his] mental defect suffered from [past traumas] of [a] 2003 incident." *Id.* at 12. Regarding his heat of passion claim, Santana asserts that "reasonable counsel would have retained an expert to offer an opinion to address the elements of a heat of passion defense." *Id.* at 18.

The PCRA court found no merit to Santana's claim. In its Rule 907 notice, the PCRA court explained:

> Though his petition references [a] 2003 attack, attached to his *pro se* petition, Santana includes juvenile records [from 1997-98] referencing a serious school yard fight that resulted in him being hospitalized with head injuries. While one of the attached reports indicated that, when he was seventeen, Santana was "functioning at the lower end of the low average range," the report continued that "[i]n terms of drawing any conclusions about the impact of the head injury on current functioning, one must be cautious," as the evaluator "ha[d] no available premorbid data to prove that [Santana], in fact, was functioning well prior to the head injury." Ex. 5. Santana provides no further support for his claim, and no recent indication that he was mentally unfit to stand trial. The burden of proving a claim of ineffective assistance rests on the defendant. Santana falls far short in demonstrating that Trial Counsel was deficient in failing to request a psychiatric evaluation in this matter.
>
> ***
>
> [W]hile Santana has included records relating to head trauma received when he was a juvenile, there is no indication in the records that would demonstrate Santana was unable to formulate the specific intent to kill, as was required to establish a diminished capacity offense. Moreover, Santana's own testimony contravenes such a defense.
>
> Santana testified that after observing [Moore] enter the bar, he initially hesitated, but then approached [Moore] to try to talk to him. When [Moore] responded in a way that Santana described as "cocky," Santana stated that it "made me snap," and that is when he followed [Moore], pulled out his firearm, and proceeded

to shoot [Moore] multiple times. Santana then caught up to [Moore] and admitted striking [Moore] several times with the firearm before getting into his car and driving away. While Santana admitted that he shot [Moore], which is necessary to a claim of diminished capacity, his testimony clearly indicates that his cognitive abilities of deliberation and premeditation were not so compromised as to vitiate his specific intent to kill. Likewise, while Santana admitted that he was intoxicated, the mere fact of intoxication does not give rise to a diminished capacity defense. We find that Santana's claim of ineffectiveness of Trial Counsel for failure to call expert witnesses or to request a psychiatric evaluation lacks merit.

Rule 907 Notice, 9/27/22, at 11-13.[3]

In addressing third PCRA counsel's Rule 907 response, the PCRA court reaffirmed that, "[Santana] failed to demonstrate that he was prejudiced by any alleged ineffectiveness as his own testimony contravened a diminished capacity defense." Order, 3/13/23, at 1 (unnumbered). The PCRA court further explained that an expert was not needed to testify regarding his heat of passion defense given that "[Santana's] own testimony demonstrated his deliberate actions." *Id.* at 2 (unnumbered). Finally, the PCRA court noted that trial counsel "attempted to elicit a [heat of passion] defense and requested the trial court to include a voluntary manslaughter instruction, which the trial court denied, in contradiction to [Santana's] ineffectiveness claim." *Id.*

---

[3] The Honorable Paul M. Yatron authored Santana's Rule 907 notice. Following Judge Yatron's death, the case was reassigned to the Honorable Patrick T. Barrett. Judge Barrett provided additional explanation regarding third PCRA counsel's Rule 907 response and entered the order dismissing Santana's appeal.

Our review of the record supports the PCRA court's conclusions regarding Santana's first ineffectiveness claim. Claims of trial counsel's ineffectiveness are not self-proving and therefore cannot be raised in a vacuum. *See generally*, *Commonwealth v. Pettus*, 424 A.2d 1332 (Pa. 1981). In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness or expert witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witnesses; (4) the witness was willing to testify for the defense; and (5) absence of the testimony of the witness was so prejudicial that it deprived a defendant of a fair trial.

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa. Super. 2013) (citation omitted). "Prejudice" as used in this test, requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. 2020) (citation omitted). Thus, "the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense." *Id.*

Here, Santana failed to meet any of these factors, as he failed to identify any expert that would have supported either of his defenses at trial. Our Supreme Court has long recognized that "[w]hen a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the

witness who was willing to offer such evidence." *Commonwealth v. Keaton*, 45 A.3d 1050, 1071 (Pa. 2012) (citation omitted). Thus, as Santana failed to establish his burden, his first ineffectiveness claim fails. *See Commonwealth v. Clark*, 961 A.2d 80, 94 (Pa. 2008) (explaining that, in the absence of a sufficient proffer, a petitioner's bare assertions would inappropriately convert an evidentiary hearing into a "fishing expedition" for possible exculpatory evidence).

In his second issue, Santana asserts that trial counsel was ineffective for coercing him to testify, thereby denying him his right not to do so. Santana asserts trial counsel's "misleading [caused him] to self-incriminate and [led] to an unknowing confession that was used to convict [him] of premeditated murder and all other charges with coercion of false hope of receiving the voluntary manslaughter charge." Santana's Brief at 20 (unnumbered). Santana asserts that trial counsel had no reasonable basis for having him testify, and that, but for his testimony, there is a reasonable probability that the outcome would have been different. *See id.* at 20-21.

In its Rule 907 notice, the PCRA court found no merit to Santana's claim:

> Santana alleges that Trial Counsel informed him that the only way [he] would get a voluntary manslaughter instruction was to testify on his own behalf. Santana continues that when Trial Counsel requested the voluntary manslaughter charge be delivered to the jury, that the court denied the charge.
>
> ***
>
> There is no indication from the record that Trial Counsel interfered with Santana's right to testify on his own behalf. Therefore, we view Santana's claim as implicating Trial Counsel's advice as being so unreasonable as to render his choice to testify involuntary and unknowing.

- 11 -

At trial, [the] court engaged in a colloquy to determine whether Santana wished to testify on his own behalf, and whether he understood the ramifications of testifying and his right not to testify. During the colloquy, Santana acknowledged that he understood his absolute right not to testify and that if he did testify, he would be subject to cross-examination by the Commonwealth.

It is clear from the record that Trial Counsel sought to establish a "heat of passion" defense, as Santana indicates that he wanted to present, through [his] own testimony as to his state of mind and arousal to sudden and intense passion prior to his shooting [Moore]. Santana has failed to demonstrate that Trial Counsel did not have a reasonable strategic basis for advising him to testify as it would be necessary for Santana to establish his own mental state at the time of the murder in order to assert the possible defense. Therefore, Santana, is not entitled to relief on this claim.

Rule 907 Notice, 9/27/22, at 9-11 (citations omitted).

Our review of the record supports the PCRA court's conclusions that Santana knowingly agreed to testify, and that trial counsel had a reasonable strategic basis for advising Santana to do so. As this Court has explained:

The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Michaud*, 70 A.3d 862, 869 (Pa. Super. 2013) (citation omitted).

The assertion that a killing was voluntary manslaughter is unavailable without evidence that the defendant acted under sudden and intense passion

- 12 -

at the time of the killing due to serious provocation from the victim. ***See*** 18 Pa.C.S.A. § 2503(a)(1). Here, no Commonwealth witness provided such evidence, and there was no eyewitness testimony presented by the defense. Thus, to substantiate this defense, Santana was required to testify on his own behalf, and he did so, after consultation with trial counsel. "[T]he mere fact that this trial strategy was unsuccessful does not render it unreasonable." ***Commonwealth v. Spotz***, 896 A.2d 1191, 1235 (Pa. 2006) (citation omitted). Thus, Santana's second ineffectiveness claim fails.

In his third and final ineffectiveness claim, Santana asserts that trial counsel was ineffective for failing to request a private investigator "to investigate the case and the shooting incident involving [him] and [Moore] at the Whipping Post Bar back in 2003, when [he] was brutally shot eight times by [Moore] and to locate potential witnesses to the shooting case in 2017 and the shooting case in 2003." Santana's Brief at 21 (unnumbered). He then refers to four exhibits he attached to his *pro se* PCRA petition from witnesses interviewed involving the 2003 incident. According to Santana, "[t]he jury would [have] heard from these witnesses that [Moore] was the man who shot [him] eight times in 2003 and [would have given] credibility to this testimony." ***Id.*** at 22.

Counsel has a duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. ***Commonwealth v. Basemore***, 744 A.2d 717, 713 (Pa. 2000) (citation omitted). As this Court has summarized:

- 13 -

> The failure to investigate presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. Importantly, a [PCRA] petitioner still must demonstrate prejudice. To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial.

*Commonwealth v. Pander*, 100 A.3d 626, 638-39 (Pa. Super. 2014) (citation omitted).

As with his second issue, Santana failed to meet his burden of establishing trial counsel's ineffectiveness. *Matias*, *supra*. As noted above, ineffectiveness claims are not self-proving. *Pettus*, *supra*. A PCRA petitioner claiming they received ineffective assistance of counsel must allege sufficient facts from which a court can determine counsel's effectiveness. Pa.R.Crim.P. 902(A)(12). Where the facts do not appear of record, the defendant must identify "any affidavits, documents, and other evidence showing such facts[.]" Pa.R.Crim.P. 902(A)(12)(b); *Pettus*, *supra* (explaining that when a defendant claims ineffectiveness they must set forth an offer to prove facts upon which a reviewing court can conclude that trial counsel may have been ineffective).

Although Santana attached statements taken from witnesses to the 2003 incident, he has not asserted that trial counsel knew of them or that any of them was available and willing to testify fourteen years later. Additionally, Santana has not identified or proffered any eyewitness willing to testify to his

2017 shooting of Moore which gave rise to his criminal convictions here. Thus, Santana's third claim of ineffectiveness fails.

Finally, in his brief, Santana states he "incorporates by reference" his fourth claim he raised in his *pro se* PCRA petition, asserting appellate counsel's ineffective for not adequately developing his sufficiency claim, and his fifth claim raised in his petition, alleging prosecutorial misconduct. Such incorporation does not properly preserve the issues for appellate review. **See** Pa.R.A.P. 2119(b); **Commonwealth v. Alsop**, 799 A.2d 135-36 (Pa. Super. 2002) (explaining that this court will not act as the appellant's counsel; an appellant must develop his argument so that meaningful review is possible).

In sum, because all three of Santana's claims of trial counsel fail, and his claim regarding appellate counsel is not preserved,[4] Santana's layered claim of PCRA counsel's ineffectiveness likewise fails. Thus, the PCRA court correctly denied his PCRA petition, and we therefore affirm the order denying Santana post-conviction relief.

Order affirmed.

---

[4] Even if preserved, Santana's claim of appellate counsel's ineffectiveness would merit no relief. In his direct appeal, we discussed and rejected Santana's sufficiency claim, despite appellate counsel's failure to address any specific element of first-degree murder. **See Santana**, **supra**.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/25/2024